UNITED STATES of America, Appellee,

v.

Juan A. BAUTISTA, Defendant,
Appellant.

No. 83–1690.

United States Court of Appeals,
First Circuit.

Submitted March 9, 1984.

Decided April 9, 1984.

Mitchell Benjoya and Denner & Benjoya, Boston, Mass., on brief for appellant.

William F. Weld, U.S. Atty., and E. Sydney Hanlon, Asst. U.S. Atty., on brief for appellee.

Before COFFIN, BOWNES and BREYER, Circuit Judges.

COFFIN, Circuit Judge.

Appellant was convicted in the United States District Court for the District of Massachusetts of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) and of conspiring to possess cocaine with intent to distribute it in violation of 21 U.S.C. § 846. Appellant raises four points in support of his argument that this conviction was improper. First, he contends that evidence admitted against him was the fruit of an illegal search, and that the court erred in denying his motion to suppress this evidence. Second, he claims that the court's refusal to sever his trial from that of his co-defendant compromised his right to a fair trial. Third, he argues that the court erred in admitting hearsay statements of his co-defendant. Finally, he argues that the government failed to prove its case against him, and that the court erred in refusing to grant his motion for acquittal. We find that the district court ruled correctly on all of these issues, and we affirm.

Appellant's co-defendant, Michael Paglucca, arranged to sell four ounces of cocaine to James Sullivan, an undercover agent for the Drug Enforcement Administration. Paglucca said that he and his "source" would meet at Paglucca's home at 8:30 p.m., and that Paglucca would meet Special Agent Sullivan at a Pewter Pot restaurant in Revere, Massachusetts, at 9:00 p.m. Paglucca stated that the "source" would travel to the meeting place in a separate car and would wait nearby with the cocaine while Paglucca checked to be sure that Special Agent Sullivan had the agreed-on amount of money.

On the day of the transaction, Special Agent Boeri of the Drug Enforcement Administration conducted a surveillance of Paglucca's home. He saw Paglucca leave his residence and wait on a nearby street corner for approximately forty-five minutes. At 8:45 p.m. a white Cadillac pulled up at the corner, and Paglucca got into the passenger seat and continued to wait. At 9:20 p.m. Bautista drove up in a black Lincoln Continental. Paglucca went over to the Lincoln and spoke to Bautista. Paglucca came back to the Cadillac and spoke briefly to its driver and then returned to the Lincoln and sat in the passenger seat. Bautista and Paglucca drove away in the Lincoln, and the Cadillac followed.

Special Agent Boeri followed the cars to a convenience store in Revere located around the corner from the Pewter Pot restaurant. Bautista parked the Lincoln and entered the convenience store. Paglucca ran through a gas station to the parking lot of the restaurant, where Special Agent Sullivan was waiting in his car. Paglucca apologized for being late, explaining that his source of supply had kept him waiting. He counted Special Agent Sullivan's money and then told Special Agent Sullivan that he would go back across the parking lot and get the cocaine, which was "with [his] people in a car around the corner". Paglucca left, and Special Agent Sullivan transmitted to Special Agent Boeri the information that Paglucca's companions were around the corner and that they had the cocaine with them in a car.

Paglucca returned to the Lincoln, found that Bautista was not inside, and turned toward the convenience store. He met Bautista coming out of the convenience

store and received from him a small object which Special Agent Boeri believed to be the keys to the Lincoln. Paglucca went to the Lincoln, unlocked the passenger-side door, and opened the door. At this point Special Agent Boeri arrested both Paglucca and Bautista. He then searched the Lincoln and found a packet of cocaine in a paper bag wedged between the front seats of the car.

Appellant argues that the warrantless search of the Lincoln was unlawful, and that the cocaine seized during the search should not have been admitted into evidence. The government argues that the search was justified either as a search incident to a lawful arrest or as a search made pursuant to the "automobile exception" to the warrant requirement. The district court denied appellant's motion to suppress, finding that both the arrests and the search were lawful.

Appellant raises two objections to the government's argument that the search of the automobile was proper as a search incident to a lawful arrest. First, he argues that the agents did not have probable cause to arrest him, and that any search arising out of his arrest must therefore have been illegal. Second, he argues that even if the agents did have probable cause to arrest him, they had no justification for making a protective search of the car, since he was not near the car when they arrested him.

■ Even if these arguments were supported by the record, we fail to see how they would advance appellant's claim that the motion to suppress should have been granted. The agents plainly had probable cause to arrest *Paglucca,* who had announced to Special Agent Sullivan that he was returning to his source's car to get the cocaine. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964) (Officers had probable cause to make an arrest if "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [person arrested] had committed or was committing an offense").

When the agents arrested Paglucca, he was standing beside the open door of the Lincoln. He could easily have reached into the passenger compartment of the car to seize a weapon or to destroy contraband. Under these circumstances, the agents were justified in making a protective search of the Lincoln's passenger compartment and of any package in the compartment that might conceal a weapon or destructible contraband. *See New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Because we find that the cocaine was properly seized during a search incident to a lawful arrest, we have no need to reach the government's argument that the search was also justified under the automobile exception to the warrant requirement.

Appellant argues that he was denied a fair trial because the district court refused to grant his motion to sever his trial from that of co-defendant Paglucca. He contends that his defense to the possession charge and Paglucca's defense were antagonistic. Each defendant pleaded innocent to the charge of possessing the cocaine found in the Lincoln. Appellant contends that Paglucca's claim that the cocaine was not in his possession necessarily implied that the cocaine was in appellant's possession, since appellant and Paglucca were the sole occupants of the Lincoln. In addition, appellant argues that the jurors might have considered as evidence of his guilt a "cuff list" of drug customers admitted only against Paglucca.

■ Two defendants may be charged in the same indictment and tried jointly where, as here, "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses". Fed. R.Crim.P. 8(b). A trial judge may sever the trials of defendants who were properly joined "[i]f it appears that a defendant or the government is prejudiced by a ... joinder for trial together ...." Fed.R.Crim.P. 14. This court has joined many others in holding that "[t]he grant or denial of severance is clearly within the sound discretion

of the trial court and its action on such motion will be overturned only when there has been a clear abuse of such discretion". *United States v. Davis,* 623 F.2d 188, 194 (1st Cir.1980) (citing cases). In order to show that a denial of a severance motion constitutes abuse of discretion, "a party must make a strong showing of prejudice". *United States v. Lochan,* 674 F.2d 960, 967 (1st Cir.1982). Appellant has made no such showing in this case.

The fact that two defendants assert antagonistic defenses is not enough to show that they will be prejudiced by a joint trial. *See United States v. Davis,* 623 F.2d at 194; *United States v. Becker,* 585 F.2d 703, 707 (4th Cir.1978). Instead, they must demonstrate that "the conflict is so prejudicial and the defenses are so irreconcilable that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty". *United States v. Talavera,* 668 F.2d 625, 630 (1st Cir.1982).

Paglucca, far from attempting to show that appellant was the sole possessor of the cocaine, did not testify or call any witnesses in his own behalf. In these circumstances, appellant's theory that he was prejudiced through Paglucca's denial of the possession charge is purely speculative. *See United States v. Becker,* 585 F.2d at 707. We agree with the holding in *Becker* that "[s]peculative allegations as to possible prejudice do not meet the burden of showing an abuse of discretion in denying a motion for severance". *Id.* In this case, we believe that the jurors were capable of following the trial court's instruction that they were to consider the evidence against each defendant separately. *See United States v. Smolar,* 557 F.2d 13, 21 (1st Cir.1977) (potential for prejudice in conspiracy trial is reduced where court gives appropriate limiting instructions and impresses on jury "its duty to determine the guilt of each defendant individually").

A similar analysis applies to appellant's contention that he was prejudiced by the admission into evidence of the "cuff list" taken from Paglucca at the time of the arrest. Appellant argues that the jury could have inferred that this list (purportedly of drug customers) was evidence that Paglucca had engaged in drug transactions in the past, and that appellant, who was alleged to have participated in a conspiracy with Paglucca to distribute drugs, might appear to the jurors to have been implicated in these past transactions. We find that any prejudice to appellant attending the "cuff list" is purely speculative, and that the jury was capable of following the trial court's instruction that the list was to be considered as evidence against Paglucca alone.

Appellant argues that he was denied his Sixth Amendment right to cross-examine a witness against him by the admission of hearsay statements attributed to Paglucca. Paglucca exercised his Fifth Amendment privilege not to testify. His statements about his source's role in the drug transaction were revealed in the testimony of Special Agent Sullivan. The trial court, following this court's directions in *United States v. Ciampaglia,* 628 F.2d 632 (1st Cir.1980), and *United States v. Petrozziello,* 548 F.2d 20 (1st Cir.1977), determined at the conclusion of all the evidence that it was more probable than not that the defendants had engaged in the conspiracy charged in the indictment. The court then admitted Paglucca's out-of-court statements against appellant pursuant to Fed.R.Evid. 801(d)(2)(E), which provides for admission of "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy".

Appellant admits the well-established fact that the co-conspirator exception to the hearsay rule does not itself violate the Sixth Amendment's Confrontation Clause. *Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 215, 27 L.Ed.2d 213 (1970); *United States v. Clayton,* 450 F.2d 16, 20 (1st Cir.1971). He argues, however, that the statements made by Paglucca were inherently unreliable and so should not have been admitted under the hearsay exception. We find no basis for this conclusion either in appellant's arguments or in the record. Paglucca's statements were presumptively

reliable as declarations against interest. *See United States v. Clayton,* 450 F.2d at 20. We are not convinced by appellant's argument that Paglucca might have exaggerated the closeness of his association with his "source" in order to impress Special Agent Sullivan. There is no indication in the record before us that Paglucca had a "strong motive to falsify" the statements concerning appellant; we find that those statements were properly admitted. *United States v. Klein,* 522 F.2d 296, 302 (1st Cir.1975).

Appellant argues that the trial court erred in refusing to grant his motion for acquittal on the conspiracy count. He contends that the government failed to prove beyond a reasonable doubt that he entered into an agreement with Paglucca to distribute the four ounces of cocaine recovered from the Lincoln. Instead, he argues, the evidence shows only that he agreed to drive Paglucca to Revere, a service that he might have performed without knowing that Paglucca had brought cocaine with him to complete a drug transaction.

■ This court has held:
"A conspiratorial agreement may be proven by circumstantial as well as direct evidence. The Government need not exclude 'every reasonable hypothesis inconsistent with guilt' with respect to each piece of circumstantial evidence. Rather, 'the question is merely whether the total evidence, including reasonable inferences, when put together is sufficient to warrant the jury to conclude that defendant is guilty beyond a reasonable doubt.'" *United States v. Patterson,* 644 F.2d 890, 893 (1st Cir.1981) (citations omitted).

We think that the government's evidence, which we set forth at some length at the beginning of this opinion, easily meets this standard. Bautista's movements matched those that Paglucca attributed to his "source". Although it is conceivable that Paglucca, who was late for his meeting with Special Agent Sullivan and who had a white Cadillac and driver at his disposal, might nevertheless have waited an additional thirty-five minutes to be driven to Revere in Bautista's Lincoln even though Bautista had no knowledge of or connection with the drug transaction, this hypothesis is improbable at best. There was ample evidence to support the jury's finding that appellant was guilty beyond a reasonable doubt.

■ Appellant also asks this court to reverse his conviction on the possession charge. He concedes that he moved for acquittal only on the conspiracy count. He argues, however, that if this court finds that the district court should have granted the motion for acquittal on the conspiracy count, it would be a miscarriage of justice to sustain the conviction on the possession count, since the evidence against appellant was substantially the same on both counts. We find that the evidence of record was ample to sustain a jury verdict against appellant on the possession count as well as on the conspiracy count.

*The judgment of the district court is affirmed.*